IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

UNITED STATES OF AMERICA,

v.  Criminal Action No. 3:11cr282

MICHAEL A. JONES,
         Defendant.

## MEMORANDUM OPINION

This matter comes before the Court on Michael A. Jones's motions for compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A).[1] (ECF Nos. 62, 67.) Jones requests compassionate release based on: (1) changes in the law which he says render his armed career criminal status void; and (2) his elevated risk of severe illness or death from COVID-19 infection, due to his underlying health conditions.[2] (*Id.* at 11, 14.) Because Jones establishes an extraordinary and compelling reason warranting relief and the 18 U.S.C. § 3553(a) factors support a reduction in his sentence the Court will **GRANT** his motion *IN PART*.

The Court will **REDUCE** Jones's sentence to 180 months or fifteen years' imprisonment

---

[1] Upon receipt of Jones's first motion in December 2021, (ECF No. 62), the Court ordered the government to respond. Thereafter, Jones filed a second motion restating his grounds for compassionate release and arguing that the government failed to timely respond to his original motion and thus forfeited its chance to do so. (ECF No. 67.) Attached to his second motion, Jones includes copies of his inmate transcript and individualized needs plan. (ECF No. 67-1.) The Court issued a second order directing the government to respond to Jones's claims, and on March 31, 2022, the government filed its response in opposition. (ECF No. 70.) The Court has considered both of Jones's filings and the government's response.

[2] The introduction to Jones's motion also posits several additional grounds for relief including "deteriorating prison conditions; lack of proper medical care[,] and inhumane and degrading treatment by [Federal Bureau of Prisons ("BOP")] personnel." (ECF No. 62, at 1.) Jones never revisits these claims, however. Because Jones fails to explain how such conditions affect him personally or weigh in favor of his release, the Court declines to address them further.

and **AFFIRM** his five-year term of supervised release.[3]

## I. BACKGROUND

On November 15, 2011, the grand jury returned a two-count indictment charging Jones with possession of a firearm by a felon in violation of 18 U.S.C. § 922(g)(1) (Count One) and possession of heroin in violation of 21 U.S.C. § 844 (Count Two).[4] (ECF No. 9, at 1.) Jones proceeded to trial, and on February 7, 2012, a jury found Jones guilty of unlawful possession of a firearm by a felon (Count One). (ECF No. 23.) The jury failed to reach a unanimous decision on Court Two, and the Court subsequently granted Jones's motion for a judgment of acquittal on that charge. (*Id.*; *see also* ECF No. 22.) Following Jones's conviction, the United States Probation Office prepared a Presentence Investigation Report ("PSR") for the Court.

Jones's PSR calculated his base offense level as twenty-eight, including four-points for possessing a firearm in connection with another felony offense. (ECF No. 65, at 32.) Because Jones qualified as a career offender under U.S.S.G. § 4B1.4, his final offense level rose to thirty-

---

[3] Although the phrase compassionate release appears to confine the scope of available relief to immediate release from prison, a court may, after finding that a defendant has met the statutory requirements of § 3582(c)(1)(A)(i), grant any reduction to his sentence. *See, e.g., United States v. Arey*, 461 F. Supp. 3d 343, 344 n.2 (W.D. Va. 2020); *United States v. Guess*, 576 F. Supp. 3d 370, 2:10cr140, 2021 WL 6049455, at *5 n.1 (E.D. Va. Dec. 21, 2021) (explaining that "[a]lthough motions under 18 U.S.C. § 3582(c)(1)(A) are colloquially known as compassionate 'release' motions, the statute's text states that a court 'may reduce the [defendant's] term of imprisonment'" and that "§ 3582(c)(1)(A) does not require a court to choose between granting immediate release and granting no relief at all" (emphasis and alteration in original)).

[4] On July 10, 2011, Virginia State Police noticed that Jones's car appeared to have an illegal window tint. (ECF No. 65, at 4.) After stopping Jones and briefly speaking with him, the officers turned away to check his windows. Jones seized the opportunity and ran. (*Id.* at 5.) The officers gave chase and, after several minutes, Jones threw his hands up in surrender. (*Id.*) When the officers asked Jones why he ran, he admitted that there was a gun in his car. (*Id.*) Police later recovered a semiautomatic pistol and a small amount of suspected heroin from the vehicle. (*Id.* at 6.)

three. (*Id.* at 36.) Jones also came before the Court with several prior convictions for drug offenses, and Probation calculated his criminal history score as VI. (*Id.* at 33–35.) Jones then successfully objected to several aspects of his PSR, and prior to sentencing, the Court removed the four-points for possessing a firearm in connection with another felony, noting that Jones was acquitted on Count Two. (*See* ECF Nos. 33, 36.) Subject to his status as a career offender, however, Jones's offense level remained thirty-three.[5] The Court also removed three of Jones's criminal history points, reducing Jones's criminal history score to V. (ECF No. 36.) Based on the foregoing, the Court calculated Jones's guidelines range as 210–262 months. (*Id.*) On June 4, 2012, the Court varied downward and sentenced Jones to 204 months' imprisonment. (ECF No. 37.) In December 2013, Jones filed a motion to vacate his sentence under 28 U.S.C. § 2255. (ECF No. 55.) On March 30, 2016, the Court denied his motion and dismissed the action.[6] (ECF No. 61.)

Jones now moves for compassionate release. Today, Jones is fifty years old. He is currently incarcerated at Federal Correctional Complex Oakdale I ("FCC Oakdale I"), and his

---

[5] Prior to sentencing, the Court determined that Jones had "three prior convictions [for] serious drug offenses committed on different occasions." (ECF No. 65, at 19.) He thus qualified for an enhanced penalty as an armed career criminal under the Armed Career Criminal Act ("ACCA"), 18 U.S.C. § 924(e)(2)(A). Those convictions included "1) a 1992 conviction in Richmond Circuit Court for Possession of Cocaine with Intent to Distribute as an Accommodation; 2) a 1994 conviction in Richmond Circuit Court for Distribution of Cocaine; and 3) a 2005 conviction in Henrico County Circuit Court for Distribution of Heroin." (ECF No. 70, at 3; *see also* ECF No. 65 ¶¶ 21, 23, 27.) Accordingly, Jones faced a mandatory minimum sentence of "not less than fifteen years." 18 U.S.C. § 924(e); (ECF No. 65 ¶ 35.) Jones did not object to his ACCA status prior to sentencing or on direct appeal.

[6] Jones's § 2255 petition challenged his ACCA status on similar grounds to those raised here. (*See* ECF No. 59; *see also* ECF No. 60, at 4–6 (concluding that Jones's arguments lacked merit).)

projected release date is February 12, 2026.[7]

## II. **LEGAL STANDARD**

Section 3582(c)(1)(A), as amended by the First Step Act, authorizes a district court to modify a criminal defendant's sentence if "after considering the factors set forth in [18 U.S.C. §] 3553(a) to the extent that they are applicable, it finds that . . . extraordinary and compelling reasons warrant such a reduction . . . and that such reduction is consistent with applicable policy statements . . . ."[8] 18 U.S.C. § 3582(c)(1)(A). "[P]rior to the First Step Act, courts could consider compassionate release only upon motion by the BOP." *United States v. McCoy*, 981 F.3d 271, 276 (4th Cir. 2020). Today, § 3582(c)(1)(A) allows a defendant to file a motion for compassionate release after he has "fully exhausted all administrative rights to appeal a failure of the [BOP] to bring a motion on [his] behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." 18 U.S.C. § 3582(c)(1)(A).

Congress did not define extraordinary and compelling reasons in § 3582(c)(1)(A). "Instead, the Sentencing Commission . . . addressed the issue in a policy statement, United States Sentencing Guideline § 1B1.13." *McCoy*, 981 F.3d at 276. Before the passage of the First Step Act, § 1B1.13 advised the BOP to consider compassionate release if a defendant's claim fell into one of four categories of "extraordinary and compelling reasons," including specific scenarios pertaining to a defendant's "medical condition, health and age, and family circumstances." *Id.*

---

[7] *Find an Inmate*, BOP, https://www.bop.gov/inmateloc/ (select "Find By Number"; then select "BOP Register Number"; then search for "79289-083") (last visited Aug. 22, 2022).

[8] Absent extraordinary and compelling reasons, a district court may modify a defendant's sentence if "the defendant is at least 70 years of age, has served at least 30 years in prison" for a sentence imposed under 18 U.S.C. § 3559(c), and the Director of the Bureau of Prisons ("BOP") has determined "that the defendant is not a danger to the safety of any other person or the community." 18 U.S.C. § 3582(c)(1)(A)(ii). These circumstances do not apply to Jones.

4

Following the passage of the First Step Act, however, the Sentencing Commission failed to update § 1B1.13 to account for motions filed by defendants. *Id.* at 281. As a result, the policy does not bind courts presented with a defendant's motion for compassionate release. *Id.* Thus, the Court may "consider *any* extraordinary and compelling reason for release that a defendant might raise." *Id.* at 284 (quoting *United States v. Brooker*, 976 F.3d 228, 230 (4th Cir. 2020)) (emphasis in original).

### III. DISCUSSION

Jones presents two main arguments in favor of his release. First, he asserts that the Court should grant him relief "because [he] d[oes] not qualify as an armed career criminal." (ECF No. 62, at 11.) Second, Jones claims that his "significant chronic medical condition[s] make him more vulnerable to serious illness or death from . . . [COVID-19]."[9] (ECF No. 62, at 15.)

The Court finds that Jones has exhausted his administrative remedies. After consideration of Jones's arguments, the Court concludes that Jones's ACCA-based claim does not present an extraordinary or compelling reason for relief. The Court further finds, however, that Jones's COVID-19-based claim, when combined with the length of Jones's original sentence and his impressive record of post-sentencing rehabilitative efforts, does rise to the level of extraordinary and compelling. Finally, the Court concludes that 18 U.S.C. § 3553(a) factors support a sentence modification in his case. Accordingly, the Court will GRANT his motion.

#### A. Administrative Exhaustion

On October 6, 2021, Jones submitted a request for compassionate release to the Warden of FCC Oakdale I. (ECF No. 62-1.) The Warden denied Jones's request on October 15, 2021. (*Id.*)

---

[9] Jones suffers from hypertension, anxiety, and "underlying long-C[OVID] symptoms." (*Id.* at 14.) Probation also reports that Jones has Chronic Kidney Disease, Stage III. (*See* ECF No. 66, at 1.)

5

Because Jones filed his motion for compassionate release more than thirty days after seeking relief from the BOP, Jones has satisfied the administrative exhaustion requirement of 18 U.S.C. § 3582(c)(1)(A). *See United States v. Muhammad*, 16 F.4th 126, 131 (4th Cir. 2021) (concluding that a defendant who does not appeal a BOP denial satisfies the threshold requirement of § 3582(a)(1)(A) by filing his motion with the court more than thirty days after asking the BOP warden to do so on his behalf).

### B. Extraordinary and Compelling Reasons

Jones proffers two grounds for relief. As explained below, the first lacks merit. The Court finds, though, that Jones's risk of contracting a serious case of COVID-19 while incarcerated at FCI Oakton I, combined with his exceptional record of rehabilitative conduct, and the harshness of his original sentence present an extraordinary and compelling reason for relief.

#### i. Armed Career Criminal Status

Jones first argues that if sentenced today he would not have received a sentence which "exceeds the statutory maximum for [felon in possession of a firearm] because [he would no longer] qualify as an armed career criminal." (ECF No. 62, at 11.) This is so, he says, because his "Virginia drug trafficking convictions are not 'serious drug offenses' for purposes of ACCA."[10] (ECF No. 62, at 12.)

---

[10] This section of Jones's motion presents a spectrum of half-baked claims. (*Id.* 11–14.) For example, at one point Jones asserts that "the entry of multiple [18 U.S.C. §] 922(g) convictions and sentences for the same incident of firearm possession[] violates the 'double jeopardy clause.'" (*Id.* at 12.) But Jones did not receive multiple convictions under § 922(g), and he offers no more explanation in support of this argument. Similarly, he contends that 18 U.S.C. § 924(e) does not apply to offenses prescribed in § 922(g)(1). (*Id.*) Jones provides no support for this conclusion, and moreover, he is incorrect. *See* 18 U.S.C. § 924(e)(1) (applying to any defendant "who violates section 922(g) of this title and has three previous convictions by any court referred to in section 922(g)(1) of this title for a violent felony or a serious drug offense, or both, committed on occasions different from one another").

6

"[A] compassionate release motion is not an opportunity to challenge the validity of an inmate's" final sentence. *See United States v. Morris*, No. 4:13cr25, 2022 WL 1285183, at *1 (E.D. Va. Apr. 29, 2022). The Fourth Circuit has explained, however, that district courts may properly "consider *any* extraordinary and compelling reason for release that a defendant might raise." *McCoy*, 981 F.3d at 284 (emphasis in original) (quoting *Brooker*, 976 F.3d at 230). Accordingly, the Court will address Jones's ACCA-based argument.

> Federal law prohibits any felon—meaning a person who has been convicted of a crime punishable by more than a year in prison—from possessing a firearm. 18 U.S.C. § 922(g). A person who violates that restriction can be sentenced to prison for up to 10 years. § 924(a)(2). For some felons, however, [ACCA] imposes a much more severe penalty. Under [ACCA], a person who possesses a firearm after three or more convictions for a "serious drug offense" or a "violent felony" is subject to a minimum sentence of 15 years and a maximum sentence of life in prison. § 924(e)(1). Because the ordinary maximum sentence for a felon in possession of a firearm is 10 years, while the minimum sentence under [ACCA] is 15 years, a person sentenced under [ACCA] will receive a prison term at least five years longer than the law otherwise would allow.

*Welch v. United States*, 578 U.S. 120, 122–23 (2016).[11] As pertinent here, § 924(e)(2)(A)(ii) defines a "serious drug offense" as "an offense under State law, involving manufacturing,

---

Jones also argues that the Supreme Court's holding in *Johnson v. United States*, 576 U.S. 591 (2015) renders his sentence invalid. (ECF No. 62, at 11–12 (citing *Johnson*, 576 U.S. at 606).) In *Johnson*, the Supreme Court held that § 924(e)(B)(ii)'s residual clause definition of "violent felony" was unconstitutionally vague. *Johnson*, 576 U.S. at 593–94, 606. This argument likewise fails because Jones's ACCA status is not predicated upon the residual clause struck down in *Johnson*.

Insofar as Jones intends to present arguments beyond the ones addressed here, the Court declines to parse through his undeveloped claims in search of their intended meaning or some angle which might entitle him to relief.

[11] On June 25, 2022, the Bipartisan Safer Communities Act became law. Pub. L. No. 117-159, 136 Stat. 1313 (June 25, 2022). The Act increases the statutory maximum term of imprisonment for violations of 18 U.S.C. § 922(g) from ten to fifteen years. *Id.* § 12004(c), 136 Stat. at 1329. At the time of Jones's sentencing, however, the maximum term of imprisonment was ten years. Further, if resentenced today, Jones's maximum term of imprisonment under § 922(g) would remain ten years because "the Constitution's *Ex Post Facto* Clause, Art. I, § 9, cl.

7

distributing, or possessing with intent to manufacture or distribute, a controlled substance . . . for which a maximum term of imprisonment of ten years or more is prescribed by law." 18 U.S.C. § 924(e)(2)(A)(ii).

Prior to Jones's sentencing, the Court determined that Jones had committed three prior serious drug offenses. *See supra* note 4. As the Court explained in its March 2016 Opinion,

> [i]n 1991, in the Circuit Court for the City of Richmond, Virginia, Jones was convicted of possession of cocaine with intent to distribute as an accommodation. Jones was sentenced to ten years of imprisonment, with five years suspended. In 1994, again in the Circuit Court for the City of Richmond, Virginia, Jones was convicted of two counts of distribution of cocaine. Jones was sentenced to eight years of imprisonment for the first count, and fifteen years of imprisonment, suspended for good behavior, for the second count. In 2005, in the Circuit Court for Henrico County, Virginia, Jones was convicted of two counts of distribution of heroin. For the first count, Jones was sentenced to eight years of imprisonment, with five years suspended; for the second count, he was sentenced to five years of imprisonment, with four years suspended, to run consecutively.
>
> Under Virginia law, heroin is a Schedule I controlled substance. Va. Code Ann. § 54.1- 3446(2). Cocaine is classified as a Schedule II controlled substance. *Id.* § 54.1-3448(1). A person convicted of an offense involving the distribution or possession with intent to distribute a Schedule I or II substance is subject to imprisonment "for not less than five nor more than 40 years." *Id.* § 18.2-248(C).[12] The criminal penalties for Jones's three offenses involving distribution or possession with intent to distribute a controlled substance clearly meet the ACCA's statutory requirement of having a maximum length of ten years or more; therefore, these three offenses correctly qualified as "serious drug offenses." *See* 18 U.S.C. § 924(e)(2)(A)(ii). The fact that "the state court exercised its discretion in sentencing [Jones] to suspended sentences" has no bearing on the determination that these convictions met the definition of 'serious drug offense" under the ACCA. *United States v. Rawls*, No. 3:12-602- CMC, 2015 WL 75052, at *3 (D.S.C. Jan. 6, 2015) (rejecting similar argument).

---

3, prohibits applying a new Act's higher penalties to pre-Act conduct." *Dorsey v. United States*, 567 U.S. 260, 275 (2012).

[12] This was also true under the previous versions of Va. Code. § 18.2-248 in effect at the time of Jones's convictions. *See Robertson v. United States*, No. 7:12cr18, 2014 WL 1385403, at *2 n.4 (W.D. Va. Apr. 9, 2014) ("A federal sentencing court considering whether a previous state conviction qualifies under § 924(e) must look to the law that applied at the time of the conviction.").

(ECF No. 60, at 5–6 (some internal citations and a footnote omitted)); *see also United States v. Stancil*, 4 F.4th 1193, 1198 (11th Cir. 2021) (concluding that "prior convictions under § 18.2-248 categorically qualify as serious drug offenses within the meaning of ACCA"); *United States v. Jones*, No. 4:20cr6, 2021 WL 2582821, at *4–5 (W.D. Va. June 22, 2021) (finding that defendant's three prior Virginia cocaine convictions supported ACCA status); *United States v. Jackson*, 546 F. App'x 643, 646 (9th Cir. 2013) (rejecting petitioner's argument that a Virginia conviction for distributing cocaine was not a predicate "serious drug offense" for ACCA enhancement). Because Jones was previously convicted of three state drug offenses "for which a maximum term of imprisonment of ten years or more is prescribed by law," he remains an armed career criminal.[13] 18 U.S.C. § 924(e)(2)(A)(ii). Accordingly, the Court finds that Jones's claims to the contrary lack merit and do not amount to an extraordinary and compelling reason for compassionate release.

*ii. Elevated Risk of COVID-19*

Jones also asserts that his "high level of hypertension and . . . underlying long-Covid

---

[13] Jones argues that *United States v. Simmons*, 649 F.3d 237 (4th Cir. 2011) renders this conclusion erroneous. He is wrong. In *Simmons*, the Fourth Circuit found that a defendant's sentence under the North Carolina Structured Sentencing Act ("NCSSA") for marijuana possession was not a qualifying predicate crime under ACCA because the NCSSA "requires sentencing judges to 'effectively tailor[] the statutory maximum punishment available to each individual defendant.'" *Id.* at 250 (quoting *United States v. Pruitt*, 545 F.3d 416, 420 (6th Cir. 2008) (alteration in original)). Thus, to enhance a federal sentence based on a prior NCSSA conviction, "a sentencing court [must] determine the maximum sentence of the prior conviction based on the actual level of aggravation, rather than the maximum sentence that could have been imposed on a hypothetical defendant who was guilty of an aggravated offense." *United States v. Brown*, No. 3:01cr304, 2013 WL 2317794, at *4 (E.D. Va. May 28, 2013). Jones was not sentenced under the NCSSA or any Virginia analogue, and accordingly, *Simmons* does not apply to the facts of his case. *See Robertson*, 2014 WL 1385403, at *2 n.5 ("The court notes that unlike in . . . *Simmons*, . . . the maximum term of imprisonment for [Jones's] previous [Virginia drug] convictions was not in any way tied to any hypothetical aggravating factors (such as a recidivism finding).").

symptoms . . . increase[] his susceptibility to . . . new . . . [v]ariants of Covid-19."[14] (ECF No. 62, at 14.) During the COVID-19 pandemic, "courts have found extraordinary and compelling reasons for compassionate release when an inmate shows both a particularized susceptibility to [COVID-19] and a particularized risk of contracting the disease at his prison facility." *United States v. Feiling*, 453 F. Supp. 3d 832, 841 (E.D. Va. 2020). Accordingly, compassionate release may be appropriate when an inmate demonstrates both that (1) "the inmate's preexisting medical condition increases that individual's risk of experiencing a serious, or even fatal, case of COVID-19"—or particularized susceptibility—and (2) "the risk of contracting COVID-19 in a prison is higher than the risk outside the prison"—or particularized risk. *United States v. High*, 997 F.3d 181, 185 (E.D. Va. 2021); *see also Feiling*, 453 F. Supp. 3d at 841. "In assessing whether the record shows the existence of extraordinary and compelling reasons for compassionate release, courts consider, *inter alia*, the guidance of the [Center for Disease Control ("CDC")] . . . ." *United States v. Thompson*, No. 3:19cr76, 2021 WL 2673049, at *2 (E.D. Va. June 29, 2021).

i. Particularized Susceptibility

In addition to Jones's self-reported conditions of hypertension and residual COVID-19 symptoms, the government supplies that Jones suffers from Stage III kidney disease.[15] (*Id.*) "Both

---

[14] Jones contracted COVID-19 in January 2021. (ECF No. 70, at 14.) The government asserts that Jones "appears to have had only a mild case." (*Id.*) The government proffers no evidence that prior infection severity is an appropriate benchmark for predicting how severe a person's symptoms may be upon reinfection. The CDC notes that research is still needed on that question, and one study from the University of Chicago found that reinfected patients experienced equal or *worse* symptoms. *See Reinfections and COVID-19*, Ctrs. Disease Control & Prevention, https://www.cdc.gov/coronavirus/2019-ncov/your-health/reinfection.html (last visited Aug. 24, 2022); Jingzhou Wang et al., *COVID-19 Reinfection: A Rapid Systematic Review of Case Reports and Case Series*, 69 J. Investigative Med. 1253, 1253 (2021).

[15] "[A]t Stage III the kidneys have lost about 50% of their function." (ECF No. 70, at 13.)

10

hypertension and chronic kidney disease are listed by the CDC and other medical authorities as factors raising one's risk for serious disease or death from COVID-19." (*Id.* at 14); *see also People with Certain Medical Conditions*, Ctrs. Disease Control & Prevention, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last visited Aug. 22, 2022) (listing both hypertension and chronic kidney disease as conditions which increase a person's risk of developing severe illness from COVID-19). Indeed, the government concedes that "[th]ere is no disputing that the defendant has several conditions that are widely regarded as elevating one's risk for contracting a severe case of COVID-19." (ECF No. 70, at 13.) Thus, the Court finds that Jones's "preexisting medical condition increases [his] risk of experiencing a serious, or even fatal, case of COVID-19." *High*, 997 F.3d at 185.

ii. Particularized Risk

Although Jones's medical conditions render him particularly susceptible to serious illness from COVID-19, the Court finds that he fails to demonstrate a particularized risk of contracting the virus while housed at FCC Oakdale I.

Courts in this district have repeatedly required that defendants show that "the risk of contracting COVID-19 in [their] prison is higher *than the risk outside the prison.*" *Id.* (emphasis added). Jones generally alleges that the Department of Justice continues to "sweep the problem [of COVID-19 infections among inmates] under the rug," improperly handle vaccinations, and withhold treatment for inmates who have had COVID-19. (ECF No. 62, at 9–10.) Jones does not, however, allege that any of these practices happen at FCI Oakdale I, provide any evidence that they do in fact occur, or explain how such issues pose a risk to him.[16] To the contrary, the record

---

[16] Regarding FCI Oakdale I, Jones says that because "prisons are in lock down for C[OVID]-19, and other reasons, . . . there is no commissary for hyg[i]ene [and inmates receive] inadequate meals." (ECF No. 62, at 24.) He also explains that such lockdowns have affected his

11

is silent as to whether Jones's risk of contracting COVID-19 at FCC Oakdale I is higher than his risk would be upon release. The BOP's website currently reflects that there are two active cases of COVID-19 at FCI Oakdale I among staff and fifty active cases among inmates. *COVID-19 Coronavirus*: *Covid-19 Cases*, BOP, https://www.bop.gov/coronavirus/ (last visited Aug. 22, 2022). The Court notes that these numbers are not insignificant, particularly in light of the number of inmates who have died from COVID-19 while incarcerated in that facility.[17] *Id.* Nevertheless, as Jones himself acknowledges, FCC Oakdale I has implemented spread reduction measures including the use of modified operations and vaccinations. (ECF No. 62, at 10.) Indeed, Jones has received two doses of a vaccine. (ECF No. 70, at 14.)

The Court also notes that many public facilities no longer require proof of vaccination or masks. Jones explains that if released he "can live with his family in Richmond" and potentially gain employment as an electrician. (ECF No. 62, at 23.) But Jones fails to explain how such accommodations and public facing work would present a lesser risk of COVID-19 exposure than his current situation. Because Jones fails to identify any aspect of his current confinement that places him at a greater risk of COVID-19 infection than he would otherwise be subject to if released, the Court finds that Jones does not demonstrate a particularized risk of contracting COVID-19 at FCC Oakdale I. Accordingly, the Court concludes that this heightened risk of COVID-19 while in prison, *alone*, does not warrant immediate release.

---

ability to "complete his classes" and "gain the educational or trade skills [that] the BOP can normally offer." (*Id.*) He does not, however, explain how these issues increase his exposure to COVID-19 or render his risk of contracting the virus greater than the risk of contracting it outside of prison.

[17] The Court notes that FCI Oakton I currently has the highest published number of infected inmates at any BOP facility. Further, as the Court considered Jones's motion, the number of active cases among inmates jumped from three to fifty. This instability evinces both the seriousness of Jones's claims and the difficulty of the Court's task in responding to such motions.

12

### *iii. Other Factors*

Although the Court finds that Jones fails to demonstrate a particularized risk of contracting COVID-19 at FCI Oakton I, the Court need not consider Jones's pleas for relief in isolation. To the contrary, the Fourth Circuit has admonished district courts to consider the totality of a defendant's claims and perform a holistic assessment of the arguments he raises in light of his record of post-sentencing conduct. *United States v. Hargrove*, 30 F.4th 189, 198 (4th Cir. 2022) (explaining that the extraordinary and compelling circumstances "inquiry is multifaceted and must take into account the totality of the relevant circumstances"); *United States v. Davis*, No. 21-6960, 2022 WL 127900, at *2 (4th Cir. Jan. 13, 2022). When reviewing the record as a whole, the Court finds that Jones's case warrants relief.

The Court sentenced Jones in 2012, many years before the COVID-19 pandemic fundamentally restructured everyday prison life for thousands of men and women in BOP custody. Accordingly, although the Court considered the many hardships attendant to incarceration when it sentenced Jones, it did not, and could not, have accounted for the effect of the pandemic on his sentence. This change in circumstances is particularly salient in cases like Jones's, where a defendant suffers from severe medical conditions, because incarceration largely strips inmates of the ability to made health-related decisions for themselves. A closer examination of Jones's post-sentencing record reveals that between 2012 and 2020 Jones completed approximately thirty-seven education courses and programs, plus a drug education class. (*See* ECF No. 67-1.) The government seizes upon the fact that such classes vanished from Jones's record in recent years. (ECF No. 70, at 4.) But Jones explains that prison lockdowns have rendered him unable "to complete his classes." (ECF No. 62, at 24.) Further, Jones has not sat idle during the past year; despite the unavailability of many rehabilitative programs, Jones now works as an Orderly. (ECF

No. 66, at 1.) Further, during his almost-ten years in prison, Jones has received just one incident report.[18] (*Id.*)

The Court finds that Jones's advanced susceptibly to serious illness or death from COVID-19 and the manifest impact of the pandemic on Jones's confinement, combined with Jones's non-violent criminal record, the extreme length of his sentence, and his impressive and well-documented record of rehabilitative and educational efforts amount to an extraordinary and compelling reason for relief.

### *C. Section 3553(a) Factors*

Because Jones establishes an extraordinary and compelling reason for relief, the Court next turns to whether the § 3553(a) factors support his release. Section 3553(a) requires that a district court must impose a sentence that is "sufficient, but not greater than necessary" to accomplish the many goals of sentencing. As most relevant here, a sentence must "reflect the seriousness of the offense," and "promote respect for the law." 18 U.S.C. § 3553(a)(2). The Court finds that a modest reduction to Jones's sentence will not undermine these goals.

The Court sentenced Jones to seventeen years in prison—a long term of incarceration by any standard. And although possession of a weapon following a felony conviction is certainly a serious offense, the Court notes that Jones's crime did not involve violence. Nevertheless, and despite Jones's assertions to the contrary, *see supra* p. 6–9, his many prior drug offenses render him an armed career criminal. Compassionate release does not grant this Court a free license to examine and undermine the wisdom of Congress's imposition of such harsh punishments on repeat offenders like Jones. But, "[w]hen Congress authorized district courts, as a matter of discretion, to release an inmate from prison based on extraordinary and compelling reasons, it did so to

---

[18] Jones admitted to possessing a cell phone in 2020. (*Id.*)

14

introduce compassion as a factor in assessing ongoing terms of imprisonment." *Hargrove*, 30 F.4th at 197. Thus, this Court must carefully "balance the severity of [Jones's] personal circumstances, on the one hand, against the needs for incarceration, on the other." *Id.*

The Court has weighed Jones's serious medical conditions, the lengthy sentence he has already served, and his record of rehabilitation against his offense of conviction and now finds that his sentence is greater than necessary to reflect the seriousness of his offenses and provide just punishment for his crime. *See* 18 U.S.C. § 3553(a)(2)(A).

The Court also finds that Jones's personal characteristics weigh in favor of a modest reduction. Jones came before the Court with a serious criminal history. The Court notes, however, that Jones committed many of his crimes while under the age of twenty-five. (*See* ECF No. 65, at 10–14.) Jones asserts that he no longer presents a danger to the public and says that he "never wants to put himself in the position of having to be incarcerated" again. (ECF No. 62, at 23.) Further, he notes that he has both a supportive family who are ready and willing to aid him and the skills necessary to seek gainful employment upon release. (*Id.*) Finally, Jones contends that his age, combined with his serious health conditions, render his risk of recidivism low. (*Id.* at 24.) Indeed, while many factors drive a defendant to reoffend, data from the United States Sentencing Commission indicates that risk of recidivism generally decreases with age.[19] Finally, while the Court acknowledges that recidivism presents some risk in this case, Jones's lengthy term of supervised release will provide continuing support, structure, and oversight while he transitions to life outside of prison.

---

[19] *See Recidivism Among Federal Offenders: A Comprehensive Overview*, United States Sentencing Comm'n, (2016), https://www.ussc.gov/sites/default/files/pdf/research-and-publications/research-publications/2016/recidivism_overview.pdf

15

Upon due consideration, the Court finds that a sentence of fifteen years' imprisonment followed by five years of supervised release is sufficient to afford adequate deterrence to Jones and other similarly situated defendants, to protect the public, and to accomplish the other goals of sentencing. *See* 18 U.S.C. § 3553(a)(2)(A).

## IV. CONCLUSION

The Court finds that Jones has demonstrated extraordinary and compelling reasons justifying relief under 18 U.S.C. § 3582(c)(1)(A) and that the § 3553(a) factors support a modest reduction to his sentence. Accordingly, the Court will **GRANT** his motion. (ECF Nos. 62, 67.) The Court will **REDUCE** his sentence to a total term of **180 months' imprisonment**. Jones shall receive credit for any time served for his offense.

Further, upon release from imprisonment, Jones shall be on supervised release for a term of **FIVE (5) YEARS**. All other provisions of the judgment dated June 5, 2012, (ECF No. 37), SHALL remain in effect.

An appropriate Order shall accompany this Memorandum Opinion.

Date: 25 August 2022
Richmond, VA

/s/
John A. Gibney, Jr.
Senior United States District Judge